IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BETTY L. HUGGINS, ELLA JEAN MOORE,**
**and LARRY B. GROVES,**

        **Plaintiffs,**

**v.**                      **//   CIVIL ACTION NO. 1:12CV46**
                                      **(Judge Keeley)**

**PROFESSIONAL LAND RESOURCES, LLC,**
**a West Virginia limited liability**
**company,**

        **Defendant.**

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 17]

On July 9, 2012, the defendant, Professional Land Resources, LLC ("PLR"), filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, the Court **DENIES** PLR's motion.

**I.**

**A.**

This case arises from the delinquent tax sale of two oil and gas estates. The plaintiffs, Betty L. Huggins, Ella Jean Moore, and Larry B. Groves ("the Silva heirs"), are descendants of John Silva ("Silva"). In 1941, Silva sold the surface rights to two pieces of property located in Preston County, West Virginia, but severed and retained the properties' oil and gas estates. Upon Silva's death in

1960, he devised those estates to his wife, Freda, who upon her death in 1992, devised them to her three daughters, Betty, Ella Jean, and Mary. Mary died testate in 2005, leaving her interest in the estates to her son, Larry.

Silva and his heirs did not enter the oil and gas estates on the land books of Preston County, West Virginia, as required by W. Va. Code § 11A-3-37. That failure resulted in two outstanding tax liens, which the Deputy Commissioner of Delinquent and Nonentered Lands of Preston County ("the Deputy Commissioner") sold to PLR on September 9, 2009 and October 5, 2010. W. Va. Code § 11A-3-52 requires a tax lien purchaser, such as PLR, to "prepare a list of those to be served with notice to redeem and request the deputy commissioner to prepare and serve the notice." The tax lien purchaser must conduct that search with reasonable diligence. Id. §§ 11A-3-55, 11A-4-4.

Based on its search of the Preston County land records, PLR identified no parties in interest to the oil and gas estates who were due actual notice of their redemption rights, and it therefore directed the Deputy Commissioner to effect notice by publication. Relying solely on PLR's representation, the Deputy Commissioner published a legal notice in local newspapers. As no one came forward to redeem the oil and gas estates after publication, the

Deputy Commissioner deeded them to PLR on March 9, 2010 and April 17, 2011.

After discovering PLR's tax deeds, the Silva heirs filed suit against PLR in the Circuit Court of Preston County, West Virginia, pursuant to 42 U.S.C. §§ 1983 and 1988(b), alleging that PLR had violated their Fourteenth Amendment right to proper notice when it failed to conduct a duly diligent record search. They also sought a declaration that PLR's tax deeds were void, and that they were the legal owners of the estates pursuant to W. Va. Code §§ 11A-4-3, 4 and 6. PLR removed the case based on federal question jurisdiction, and then filed the pending motion to dismiss. That motion is fully briefed and ripe for review.

**B.**

Articles 3 and 4 of Chapter 11A of the W. Va. Code contain the real property tax sale statutes of the State of West Virginia ("the State"). The State requires each landowner to enter his property on the landbooks for taxation. W. Va. Code § 11A-3-37. If a landowner fails to do so for five successive years, the State Auditor will certify the property to the Deputy Commissioner of the appropriate county, who then sells the State's outstanding tax lien at a public auction. Id. §§ 11A-3-42, 44, 45(a). At this point, the property has not left the hands of its original owner; the State has simply

3

sold its tax lien against the property to a third-party.

To take ownership of the property, the tax lien purchaser must secure a tax deed from the State. To do so, the lien purchaser must first "prepare a list of those to be served with notice to redeem [their interest in the property] and request the deputy commissioner to prepare and serve the notice as provided in sections fifty-four and fifty-five of this article." Id. § 11A-3-52(a); see Mingo County Redevelopment Auth. v. Green, 534 S.E.2d 40, 48-49 (2000). In other words, the lien purchaser is to search public records for others with an interest in the property subject to the tax lien, and to communicate those names and address to the Deputy Commissioner so that the interested party may receive actual notice of his right to redeem the property prior to the issuance by the State of a tax deed to the lien purchaser. Should the lien purchaser not discover other interested parties, the Deputy Commissioner effects notice only by publication. W. Va. Code § 11A-3-55.

The tax lien purchaser must search the public records with reasonable diligence. Id. §§ 11A-3-55, 11A-4-4.  The "reasonable diligence" requirement found in the State's statutory tax sale system "parallel[s] the [notice] requirements of the United States Constitution." Plemons v. Gale, 396 F.3d 569, 572 (4th Cir. 2005)

4

[hereinafter "Plemons II"] (citing Mennonite Board of Missions v. Adams, 462 U.S. 791 (1983)). It is vital that the lien purchaser comply with the statutory and constitutional requirement of a reasonably diligent search because the State does not require the Deputy Commissioner to conduct his own check of the records before issuing the tax deed. Instead, to protect property owners from insufficient record searches by the tax lien purchaser, the State permits the tax sale deed to be set aside if it is shown by "clear and convincing evidence" that the tax sale purchaser "failed to exercise reasonably diligent efforts to provide notice of his intention to acquire such title to the complaining party or his predecessors in title." W. Va. Code § 11A-4-4(b).[1]

The State's real property tax sale system is a unique balance between a property owner's Fourteenth Amendment rights and the state's limited budget. Wells Fargo Bank, N.A. v. UP Ventures II, LLC, 675 S.E.2d 883, 886 (W. Va. 2009). Enacted in 1994 in response to a series of decisions by the West Virginia Supreme Court of Appeals adopting the standard of Mennonite,[2] the statutes "make the

---

[1] As noted at oral argument, unlike a successful 42 U.S.C. § 1988 claim, West Virginia's statutory remedy for an unreasonably diligent search does not allow for recovery of attorney's fees and costs.

[2] See Syl. pt. 1, Lilly v. Duke, 376 S.E.2d. 122 (W. Va. 1988); Anderson v. Jackson, 375 S.E.2d 827 (W. Va. 1988); Citizens Nat'l Bank of St. Albans v. Dunnaway, 400 S.E.2d 888 (W. Va. 1988).

cost of [providing constitutionally-required] notice an expense of the purchaser of the tax lien" and not the State. John W. Fisher, II, Delinquent and Non-entered Lands and Due Process, 115 W. Va. L. Rev. 43, 60 (2012). Moreover, the statutes not only shift the cost of such notice to the lien purchaser, but also the burden of effecting a constitutionally adequate search. Plemons v. Gale, 298 F.Supp.2d 380, 381 (S.D.W. Va. 2004) [hereinafter "Plemons I"] (rev'd on other grounds, 396 F.3d 569 (4th Cir. 2005)) ("Plemons I"). In sum, the State's tax sale statute does more than simply delegate a state function. It assigns to a private party the State's Fourteenth Amendment obligation to notify property owners of their right to redeem their property interest.

### C.

To survive a motion to dismiss filed pursuant to Fed.R.Civ.P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). With this standard in mind, the Court turns to whether the complaint of the Silva heirs' states a claim under 42 U.S.C. §1983.

**II.**

**A.**

To state a claim under 42 U.S.C. § 1983, the Silva heirs must plausibly plead two elements: that PLR deprived them of a right secured by the Constitution, and that it did so under color of state law. PLR does not dispute the first element. What PLR does dispute, and what lies at the heart of its motion, is that it acted under color of state law when it searched the Preston County, West Virginia land records for persons entitled to notice of their right to redeem the oil and gas estates in issue.

Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 does not encompass private action, no matter how egregiously the private party has violated another's constitutional rights. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999); Tulsa Prof'l Collection Servs., Inc. v. Pope, 485 U.S. 478, 485 (1988); Lugar v. Edmondson Oil Co., 457 U.S. 922, 935-36 (1982). The Supreme Court has frequently cautioned courts to adhere to that general principle in order to "preserve[] an area of individual freedom by limiting the reach of federal law." Mentavlos v. Anderson, 249 F.3d 301, 310 (4th Cir. 2001) (quoting Lugar, 457 U.S. at 936; Edmonson v. Leesville Concrete Co., 500 U.S. 614, 619 (1991)). A private party

7

does not act under color of state law when he simply uses the courts, invokes a state-created remedy, Tulsa Prof'l Collection Servs., 485 U.S at 485 (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978)), or when he acts only with the state's approval or acquiescence. Philips v. Pitt County Mem'l Hosp., 572 F.3d 176, 181 (4th Cir. 2009).

Something more is necessary to transform the actions of a private party into actions that are fairly attributable to the state. While the Fourth Circuit has announced various tests for fair attribution, compare Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 343 (4th Cir. 2000) (listing four tests, including "the extent and nature of public assistance and public benefits accorded the private entity"), with Haavistola v. Cmty. Fire Co., 6 F.3d 211, 215 (4th Cir. 1993) (listing three tests), the central inquiry for all remains constant – "whether the party can be described 'in all fairness' as a state actor." United Auto Workers, Local No. 5285 v. Gaston Festivals, Inc., 43 F.3d 902, 906 (4th Cir. 1995) (citing Edmonson, 500 U.S. at 620).

Due to "the extent and nature of public assistance and public benefits accorded" to PLR by the State's real property tax sale statutes, Goldstein, 218 F.3d at 343 (citing Edmonson, 500 U.S. at 621; Tulsa Prof'l Collection Servs., 485 U.S 478), PLR can, and

8

should, be fairly described as a state actor. In <u>Tulsa Professional</u>, the Supreme Court determined that a private party required by Oklahoma's Probate Code to provide notice to creditors of a probate estate was, for purposes of the Fourteenth Amendment, a state actor. Under the nonclaim statute at issue in <u>Tulsa Professional</u>, once a court instituted a probate proceeding and appointed the executor, the executor was charged with providing notice by publication to the decedent's creditors and providing proof of such notice to the court. By publishing that notice, the executor triggered a two-month period during which creditors of the estate had to present their claims against the estate or be forever barred from collecting on those debts.

Due to Oklahoma's substantial involvement in the probate process, the private party charged with notifying creditors could be fairly described as a state actor because

> [t]he probate court is intimately involved throughout, and without that involvement the time bar is never activated. The nonclaim statute becomes operative only after probate proceedings have been commenced in state court. The court must appoint the executor or executrix before notice, which triggers the time bar, can be given. Only after this court appointment is made does the statute provide for any notice; § 331 directs the executor or executrix to publish notice "immediately" after appointment. . . . Finally, copies of the notice and an affidavit of publication must be filed with the court. It is only after all of these actions take place that the time period begins to run, and in every one of these actions, the court is intimately involved. This

>     involvement is so pervasive and substantial that it must
>     be considered state action subject to the restrictions of
>     the Fourteenth Amendment.

Tulsa Prof'l, 485 U.S. at 487.

The State's real property tax sale system is characterized by similar, if not more extreme, pervasive and substantial state involvement. First, the State sells its tax lien to a private party, like PLR. Like the appointment of the executor under Oklahoma's probate code, the sale of the tax lien triggers the private party's obligation to perform a reasonably diligent search of public records; absent the sale of the lien by the State, the private party has no role in the tax sale system at all. After the private party searches the public records, it provides the results of its search to the Deputy Commissioner, who then notifies interested parties. The method of notice used by the Deputy Commissioner, actual or constructive, depends entirely on the list provided by the private party. W. Va. Code § 11A-3-55. Finally, by issuing the tax deed, the State transfers ownership of the property from the tax debtor to the tax lien purchaser, extinguishing the tax debtor's interest in the property. Plemons I, 298 F.Supp.2d at 384.

In short, the State of West Virginia's involvement in the tax sale process is even greater than was sufficient to find state

action under the Oklahoma non-claim statute. Thus, despite its private nature, it is fair to conclude that, when PLR conducted the record search and reported its findings to the State, it acted under color of state law due to "the extent and nature of public assistance and public benefits accorded" to it by the State's real property tax sale statutes. Goldstein, 218 F.3d at 343 (citing Edmonson, 500 U.S. at 621; Tulsa Prof'l Collection Servs., 485 U.S. 478).

Other courts have also observed that lien purchasers required to perform a reasonably diligent search by the State's tax sale statutes act under color of state law. Plemons v. Gale, 396 F.3d 569, 572 n.3. (4th Cir. 2005) ("Plemons II"); Plemons I, 298 F. Supp. 2d at 385 n.4; Wells Fargo Bank, N.A. v. UP Ventures II, LLC, 675 S.E.2d 883, 886 (W. Va. 2009). While not the primary issue in Plemons II, the Fourth Circuit noted that a lien purchaser such as PLR, who acted under West Virginia's tax sale statutes and was alleged to have failed to perform a reasonably diligent search for interested parties, was a state actor.

> [T]he tax-sale procedure in this case constitutes state action, although state law charges a private party with providing notice. Under West Virginia's statutory scheme, the State is the initial seller of the tax lien; thereafter, the State provides the tax lien purchaser with the mechanism to provide notice to interested parties. The State also extinguishes the owner's rights to the property by issuing the tax deed to the property.

11

> In order to accomplish a tax sale, then, private parties must "make use of state procedures with the overt, significant assistance of state officials," and, thus, there is state action.

Plemons II, 396 F.3d at 572 n.3 (citing Tulsa Prof'l, 485 U.S. at 486).

Moreover, the Supreme Court of Appeals of West Virginia relied on Plemons II when it observed that state action existed for purposes of a Fourteenth Amendment challenge to the record search conducted by a private party who purchased a tax lien at a sheriff's sale. Wells Fargo Bank, N.A., 675 S.E.2d at 886. Such lien purchasers must also conduct a reasonably diligent search of public records. W. Va. Code § 11A-3-22. As to whether the tax lien purchaser's action could fairly be attributed to the State, the Supreme Court of Appeals stated, "[The plaintiff's] due process concerns are triggered because a tax sale to a private party under West Virginia law involves 'state action' requiring due process, since, to accomplish a tax sale, a private party must make use of state procedures with overt, significant assistance of state officials." Wells Fargo Bank, N.A., 675 S.E.2d at 886 (citing Plemons II, 396 F.3d at 572).

In sum, PLR acted with the substantial assistance and encouragement of the State, and therefore acted under the color of state law for the purposes of the Silva heirs' 42 U.S.C. §§ 1983

12

and 1988 claims.

**B.**

Based on the Silva heirs' allegation that PLR's record search violated the "reasonable diligence" standard required by W. Va. Code §§ 11A-3-55 and 11A-4-4, PLR contends the complaint describes a mere "private misuse" of a statute that cannot be fairly attributed to a state actor. In other words, PLR argues that the plaintiffs cannot state a claim for relief under 42 U.S.C. § 1983 because they allege that PLR broke state law, an action that necessarily runs afoul of state policy. The Court does not agree.

In Lugar, the Supreme Court adopted a two-part approach to determine whether "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." 457 U.S. at 937.

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

Id. When a private party misuses a state statute, the private party disregards state policy, and its actions may not be fairly attributed to the state under the first prong of Lugar. 457 U.S. at 940.

On its face, the Silva heirs' complaint satisfies the first

13

prong of Lugar. Clearly, a lien purchaser's obligation under W. Va. Code § 11A-3-52(a) to notify other interested parties of their redemption rights is a "rule of conduct imposed by the state." Moreover, it is not the case here that PLR merely misused the State's real estate tax sale statutes. See Jones v. Poindexter, 903 F.2d 1006, 1011 (4th Cir. 1990) ("In Lugar, the Supreme Court held the unlawful application of the pre-judgment attachment statute did not constitute the state action required for a successful § 1983 claim.") (emphasis added). Unlike many of the pre-judgment attachment decisions cited by PLR, the Silva heirs do not allege that the oil and gas estates were improperly subjected to the tax sale system, but rather that PLR failed to provide them with proper notice of their right to redeem while fulfilling its role within the State's tax sale statutes.

The Supreme Court's decision in Edmonson, 500 U.S. 614, is helpful in understanding this distinction. There, the Supreme Court held that, in a civil case, a private attorney's racially discriminatory use of peremptory challenges constituted state action. Regardless of the fact that the private attorney's discriminatory actions certainly did not reflect the policy of the State of Louisiana, the Court easily found the first prong of Lugar to be satisfied because "peremptory challenges have no significance

outside a court of law," and "[t]heir sole purpose is to permit litigants to assist the government in the selection of an impartial trier of fact." Id. at 620.

Similarly, while PLR's allegedly insufficient record search cannot be considered the policy of the State, like the peremptory challenges examined in Edmonson, that record search has no significance outside the State's real property tax sale statutes. Furthermore, PLR's role in the tax sale system is to assist the State to "reduce the expense and burden on the [S]tate and its subdivisions of tax sales so that such sales may be conducted in an efficient manner while respecting the due process rights of owners of real property." W. Va. Code § 11A-3-1. Assuming all allegations in the complaint to be true, PLR deprived the Silva heirs of constitutionally required notice while exercising a right created by solely by the State, and did so to assist the State. Thus, the Silva heirs' alleged deprivation can be fairly described as due to the "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state." Lugar, 457 U.S. at 937. In short, contrary to PLR's argument, the Silva heirs' allegations satisfy the first prong of Lugar, and thus describe conduct that may be fairly attributed to the State for the purposes of their 42 U.S.C. §§ 1983 and 1988 claims.

**CONCLUSION**

In conclusion, for the reasons discussed, the Court **DENIES** the defendant's motion to dismiss.

It is so **ORDERED**.


DATED: January 25, 2013

                                /s/ Irene M. Keeley
                                IRENE M. KEELEY
                                UNITED STATES DISTRICT JUDGE